UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| _____ ) | |
| THE EQUAL RIGHTS CENTER ) | |
| 11 Dupont Circle, N.W., Suite 450 ) | |
| Washington, D.C.  20036, ) | |
| ) | |
| MARSHA JOHNSON ) | |
| 8560 Second Avenue, #106 ) | |
| Silver Spring, MD 20910, ) | |
| Montgomery County ) | |
| ) | |
| CHARLA YVONNE RAMSEY ) | Civil No. _____:_____ |
| 3401 Janine Lane ) | |
| Fort Washington, MD 20744, ) | |
| Prince Georges County ) | |
| ) | |
| and ) | |
| ) | |
| CHRISTOPHER BUTLER ) | |
| 4121 Jennifer Street, N.W. ) | |
| Washington, D.C. 20015, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| CVS Caremark Corporation ) | |
| One CVS Drive ) | |
| Woonsocket, RI 02895 ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**COMPLAINT**

**INTRODUCTION**

1.     Plaintiffs the Equal Rights Center ("ERC"), Marsha Johnson, Charla Ramsey and Christopher Butler (together "Plaintiffs"), by counsel, bring this action for declaratory judgment, injunctive relief and damages against defendant CVS Caremark Corporation ("Defendant"), because Defendant maintains policies and practices that result in stores that are inaccessible to persons with disabilities, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182 ("ADA"), the Rehabilitation Act, 29 U.S.C. § 794 ("Rehabilitation Act") and the District of Columbia Human Rights Act, D.C. Code § 1-2519 ("DCHRA").

2.     The ERC's knowledge of CVS' failure to provide accommodations to persons with disabilities dates back to 2001.  In 2001, the Disability Rights Council of Greater Washington,  an organization that later merged into and became part of the ERC, sued CVS Corporation (now Defendant CVS Caremark) in the United States District Court for the District of Columbia for ADA violations similar to those alleged herein.  The suit was brought after an investigation revealed that CVS stores consistently had inaccessible merchandise aisles, due to the presence of barriers such as unshelved merchandise, seasonal displays and boxes that narrowed the aisles so that passage by a wheelchair was not possible.  The resulting September 2002 settlement required CVS Corporation to take steps to ensure unobstructed aisles, accessible counters and accessible parking at its stores in Maryland, the District of Columbia and Virginia. The term of that settlement ended in 2004.

3.     After the 2002 settlement term ended, the ERC began receiving complaints from its members with disabilities regarding their continued difficulty in shopping at CVS stores located throughout the United States.  The ERC received complaints addressing at least thirty separate CVS stores located in Maryland, the District of Columbia and Virginia.  ERC members

complained of a variety of accessibility barriers, and many of those barriers pertained to the same features that CVS Corporation agreed to address in the 2002 settlement.

4.      As a result of its member complaints, and in order to learn the full extent of CVS' violations, the ERC undertook another survey of the accessibility of CVS stores.  The ERC investigated fifty CVS stores in Maryland, the District of Columbia and Virginia, as well as stores in Connecticut, Indiana, Louisiana, Massachusetts, Ohio, Pennsylvania, Texas and West Virginia.

5.      The ERC found accessibility barriers at every CVS store it surveyed throughout the United States.  The most serious barriers included: inaccessible aisles, inaccessible pharmacy counters and inaccessible parking lots.

6.      Upon information and belief, CVS' continued, widespread failure to provide accessibility at its stores throughout the United States is the result of a common design or designs dictated by Defendant's corporate policies, practices and procedures and/or absence of corporate policies, practices and procedures relating to compliance with the ADA, the Rehabilitation Act and the DCHRA.  For example, the fact that aisles in CVS stores across the nation are routinely inaccessible suggests that CVS does not ensure that its stores are designed to accommodate people with disabilities, and CVS protocol does not require its employees to promptly shelve merchandise.

7.      CVS has full notice that the issues alleged in this Complaint violate the ADA, the Rehabilitation Act and the DCHRA, and CVS previously agreed to take systematic steps to address similar violations in the 2002 Disability Rights Council of Greater Washington settlement.

8.      Plaintiffs allege that Defendant continues its discriminatory policies and practices, and remains in violation of the ADA, the Rehabilitation Act, and the DCHRA.

9.      Accordingly, Plaintiffs request that the Court (i) declare unlawful Defendant's policies and practices of denial of access to and inside of its stores for persons with disabilities under the ADA, the Rehabilitation Act and the DCHRA; (ii) require Defendant to modify its practices, policies and procedures to comply with the ADA, the Rehabilitation Act and the DCHRA, where applicable;  (iii) require Defendant to remove architectural barriers at its stores; and (iv) enter a judgment for compensatory and punitive damages, as well as costs and fees, and such other relief as this Court deems just and proper.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs assert claims under the Americans with Disabilities Act of 1990, Pub. L. 101-335, 104 Stat. 327 (codified at 42 U.S.C. §§ 12101-12213) and the Rehabilitation Act, 29 U.S.C. § 794.

11.      This Court has supplemental jurisdiction over Plaintiffs' D.C.-based claims pursuant to 28 U.S.C. § 1367 because Plaintiffs assert claims under the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01 to 1431.08, which are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12.      The Court has personal jurisdiction over Defendant because Defendant is present in and regularly conducts business in the state of Maryland and in this judicial district.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events or omissions giving rise to this action occurred in this district and because Defendant resides in this district.

## PARTIES

14.     Plaintiff Marsha Johnson is an adult resident of Maryland.  Ms. Johnson has a physical impairment that substantially limits one or more of her major life activities.  She uses a wheelchair for mobility.

15.     Plaintiff Charla Ramsey is an adult resident of Maryland, whose place of employment is in the District of Columbia.  Ms. Ramsey has a physical impairment that substantially limits one or more of her major life activities.  She uses a wheelchair for mobility.

16.     Plaintiff Christopher Butler is an adult resident of the District of Columbia.  Mr. Butler has a physical impairment that substantially limits one or more of his major life activities.  He uses a wheelchair for mobility.

17.     Plaintiff Equal Rights Center ("ERC") is a national not-for-profit membership organization organized under the laws of the District of Columbia, with its principal place of business at 11 Dupont Circle, N.W., Suite 450, Washington, D.C. 20036.   The ERC's membership consists, in part, of persons with disabilities who live throughout the nation and others who are committed to, *inter alia*, equal rights, equal access and equal opportunity for persons with disabilities.  One of the principal goals of the ERC is the promotion of equal access for people with disabilities.   The ERC pursues this goal through various means, including research, outreach and education, counseling, advocacy and enforcement.  The ERC brings this case on its own behalf and as a representative of its members, whose right to live in and enjoy a community free from discrimination on the basis of physical disability has been infringed by the

Defendant.  The ERC also brings this case because it has been damaged by the frustration of its mission, and by having to divert significant resources that the ERC would have used to provide counseling, outreach and education, and referral services.  Instead, the ERC has devoted substantial resources to identifying and investigating Defendant's discriminatory policies and practices.

18.     Defendant CVS Caremark is a Delaware corporation with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895.  According to its 2008 Annual Report, Defendant operates the nation's largest retail pharmacy chain.  Defendant's revenues and net earnings as reported in its 2008 Annual Report were $87.4 billion and $3.2 billion, respectively.  Defendant owns and operates more than 6900 retail stores nationwide, including 165 retail stores in Maryland and 53 retail stores in the District of Columbia.  With few exceptions, the retail stores in Maryland and the District of Columbia include pharmacies.

## FACTS

### DISCRIMINATION AGAINST THE INDIVIDUAL PLAINTIFFS

18.     Marsha Johnson used to shop regularly at the CVS store located at 1290 East West Highway, Silver Spring, Maryland, because it is convenient to her home.  She used to go to this CVS store multiple times a week to purchase items and fill her prescriptions.  She also occasionally shopped at the CVS store located at 4309 Connecticut Avenue, N.W..

19.     Ms. Johnson has experienced frequent and consistent problems in gaining access to the aisles and in reaching merchandise in those stores because of crates and boxes, unshelved merchandise and merchandise displays that block the aisles.  These obstructions prevent Ms. Johnson from using many of the aisles in the stores and make it difficult for her to maneuver

throughout the store.  The clutter in the aisles frequently gets caught on Ms. Johnson's wheelchair, limiting her mobility or causing her to knock merchandise to the ground.

20.     Ms. Johnson has not complained to a CVS staff member because she is so frustrated by the extensive inaccessibility of CVS stores that she believes complaining is futile.

21.     From her experience at the CVS stores specifically identified in this Complaint, Ms. Johnson has learned that CVS maintains policies and engages in practices that discriminate against persons with disabilities and that CVS fails to take adequate steps to ensure that its stores are accessible to people who use wheelchairs.  As a result, Ms. Johnson has been generally deterred from visiting CVS stores. She no longer gets her prescriptions filled at CVS' pharmacy and will only go into a CVS store "once in a blue moon."  Ms. Johnson would regularly visit the CVS stores specifically identified in this Complaint, and other CVS stores because they have a wider selection of merchandise than other pharmacies, but for her knowledge of CVS' widespread and routine failure to provide access to people with disabilities.

22.     Charla Ramsey shops at the CVS stores located at 1500 K Street, N.W. and 1199 Vermont Avenue, N.W. because they are convenient to her place of employment.  She also shops at the CVS store at 7050 Allentown Road, Camp Springs, Maryland, because it is convenient to her home.  Ms. Ramsey has encountered frequent difficulties in accessibility at virtually every CVS store location she has visited.

23.     Ms. Ramsey has difficulty maneuvering through all of the CVS stores she visits; however, she has experienced particular problems at the 1500 K Street, N.W. location due to its narrow aisles and the variety of crates and boxes that consistently block the aisles.  While the volume of the clutter in the aisles varies from day to day depending on the restocking schedule of

the store, the clutter is so bad around holidays that Ms. Ramsey is forced to avoid shopping during these times.

24.     In July, 2008, Ms. Ramsey complained to a staff member at the CVS at 1199 Vermont Avenue, N.W. regarding the cluttered aisles.  The staff member retorted that the store was restocking, implying that storing merchandise in the aisles during restocking is in accordance with CVS protocol and that there was nothing the staff member could do about the crates and boxes obstructing the aisles.

25.     Ms. Ramsey has difficulty at the checkout counters of various CVS stores because the tiered candy and gum displays jut out an angle, which prevent her from getting close to the counters and force her to reach uncomfortably far to pay the cashier.

26.     Ms. Ramsey has difficulty accessing multiple CVS stores due to inaccessible exterior design features.  Ms. Ramsey has difficulty accessing the 7050 Allentown Road location because the entrance has doors that swing both ways.  These heavy doors are difficult to open because Ms. Ramsey must place one hand on a swinging door as leverage in order to open another swinging door with her other hand.  Additionally, at the 1199 Vermont Avenue, N.W. location, the electronic doors often are not working so Ms. Ramsey must manually open the doors.  As there is an incline immediately upon entering the store, this makes entry very difficult for a wheelchair user.

27.     From her experience at the CVS stores specifically identified in this Complaint, Ms. Ramsey has learned that CVS maintains policies and engages in practices that discriminate against persons with disabilities and that CVS fails to take adequate steps to ensure that its stores are accessible to people who use wheelchairs.  As a result, Ms. Ramsey has been generally

deterred from visiting CVS stores.  Ms. Ramsey would regularly visit all of the CVS stores specifically identified in this Complaint, and other CVS stores but for her knowledge of CVS' widespread and routine failure to provide access to people with disabilities.

28.     Christopher Butler shops regularly at the CVS stores located at 5550 Connecticut Avenue, N.W. and 2226 Wisconsin Avenue, N.W. because they are convenient to his home.  He also shops at the CVS store located at 433 L'Enfant Plaza Center, S.W. because it is convenient to his place of employment.

29.     Mr. Butler has experienced frequent problems in gaining access to the aisles and in reaching merchandise in those stores because of crates, merchandise and displays that block the aisles.  The large plastic crates that often sit on the floor in the aisles prevent Mr. Butler from using many of the aisles in the store.  Additionally, the end-cap displays at the end of the aisles impede his ability to turn around and maneuver through the store.  These barriers have prevented him from having access to an item that he wanted to purchase without requesting assistance from a store employee or another customer.  The barriers also prevent him from easily accessing the prescription area in the back of the stores.

30.     Even when Mr. Butler is able to gain access to desired merchandise, he often has had to take circuitous routes through the stores to reach the items indirectly because the most direct route is blocked by some form of barrier.

31.     With respect to the CVS store located at 433 L'Enfant Plaza Center, S.W., Mr. Butler has experienced difficulty entering the store and maneuvering around the checkout area due to the crowds of people waiting to pay who are not lined up in an orderly fashion.  There are often large boxes filled with merchandise in this area which also inhibit Mr. Butler's ability to

maneuver throughout the area.  This problem is recently exacerbated because the self-service checkout option creates a lot of crowds and confusion around the checkout area.

32.     Mr. Butler has complained to members of the staff and did not receive any response.

33.     From his experience at the three CVS stores specifically identified in this Complaint, Mr. Butler has learned that CVS does not take adequate steps to ensure that its stores are accessible to people who use wheelchairs and that CVS employees are unresponsive to the concerns of customers with disabilities.   As a result, Mr. Butler has been generally deterred from visiting CVS stores.  Mr. Butler would regularly visit the CVS stores specifically identified in this Complaint, and other CVS stores but for his knowledge of CVS' routine failure to provide access to people with disabilities.

34.     As a proximate result of Defendant's policy and practice of failure to make its stores accessible to persons with disabilities, Ms. Johnson, Ms. Ramsey and Mr. Butler have suffered injury including, but not limited to, a deprivation of their right to equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of CVS stores, as well as humiliation, embarrassment, and emotional pain and suffering.

## EQUAL RIGHTS CENTER'S INVESTIGATION OF <br> ACCESSIBILITY BARRIERS AT CVS PHARMACIES

35.     As noted above, in 2001, CVS Corporation (now CVS Caremark) was sued in Washington, D.C. by the Disability Rights Council of Greater Washington in a case alleging ADA violations similar to those alleged herein. The case was settled in September 2002.  The term of that settlement has ended.

36.     In 2005, the Disability Rights Council of Greater Washington merged into and became part of the ERC.

37.     In February, 2008, in response to the observations of ERC staff and complaints from ERC members throughout the nation that CVS had not maintained accessible policies, practices or features, the ERC began new investigations as to the accessibility of CVS stores.

38.     The ERC investigated fifty CVS stores in Maryland, the District of Columbia, and Virginia, as well as in Connecticut, Indiana, Louisiana, Massachusetts, Ohio, Pennsylvania, Texas and West Virginia.  Moreover, the ERC received reports on at least thirty CVS stores from member complaints.

39.     The ERC surveyed the accessibility of sixteen CVS stores located in the state of Maryland.  The ERC found that all sixteen stores have inaccessible aisles resulting from permanent, as well as temporary, obstructions caused by unshelved merchandise, merchandise displays and/or merchandise bins and boxes located in the aisles.

40.     The ERC found that 81 percent, or thirteen out of sixteen, of the CVS stores surveyed in the state of Maryland lack adequate parking for individuals with disabilities due to either the lack of accessible parking spaces or lack of signage.

41.     The ERC found that 37 ½ percent, or six out of sixteen, of the CVS stores surveyed in the state of Maryland have inaccessible pharmacy counters due to counter height and/or inadequate knee clearance for wheelchair users.

42.     The ERC found that out of the ten CVS stores surveyed in Maryland that have employment application devices, 90 percent, or nine out of ten, have inaccessible employment application devices due to height and width of the devices and/or insufficient physical access to the devices.

43. The ERC found that out of the seven CVS stores surveyed in Maryland that have blood pressure kiosks, 100 percent, or seven out of seven, have inaccessible blood pressure kiosks due to fixed seats.

44. The ERC found that out of the two CVS stores surveyed in Maryland that have MinuteClinics, 100 percent, or two out of two, are inaccessible.  MinuteClinic is a retail based heath clinic that operates as a wholly-owned subsidiary of CVS Corporation.  MinuteClinic health care centers are staffed by nurse practitioners and physician assistants who diagnose, treat and provide prescriptions for common illnesses and minor injuries, as well as offer common vaccinations.  The CVS MinuteClinics present a number of accessibility issues, including inadequate physical access to the clinics, inadequate knee clearance for wheelchair users and touch screen displays that are inaccessible to customers who are blind or visually impaired.

45. The ERC investigation revealed that CVS stores across the nation contain barriers that prevent wheelchair users and other people with disabilities from accessing goods and services and that violate Appendix A of the Department of Justice regulations implementing Title III of the ADA, the Standards for Accessible Design ("Standards").  The most serious of these barriers include, but are not limited to:

    a.   Paths of Travel: Paths of travel that are too narrow due to permanent architectural barriers or temporary blockage, and which thereby prevent access through the facilities for individuals who use wheelchairs, including, but not limited to, access to merchandise aisles and pharmacy counters, in violation of Standard 4.3. Eighty-four percent (84%) of the fifty stores surveyed have one or more aisles that are narrowed due to merchandise not shelved, freestanding merchandise displays, merchandise bins or cardboard boxes;

b.  <u>Pharmacy Counters:</u> Pharmacy counters that exceed the maximum height allowance in violation of Standards 4.2.5, 4.2.6, 4.32.1, 4.32.4, 7.2(1) and Fig. 6c. Thirty-two percent (32%) of the fifty stores surveyed have inaccessible counters in the pharmacy department due to counter height, lack of knee clearance and lack of adequate signage for an accessible counter.

c.  <u>Parking</u>: Parking lots that lack van accessible parking spaces, lack adequate signage, have too narrow access aisles and position accessible parking spaces too far from store entrances in violation of Standards 4.6.1, 4.6.2, 4.6.3 and 4.6.4. Sixty percent (60%) of the fifty stores surveyed do not have adequate parking for persons with disabilities.

d.  <u>Other Serious Barriers:</u>  A large percentage of the CVS pharmacies that offer blood pressure monitoring stations do not offer any station which permits usage by individuals who use wheelchairs, in violation of Standards 4.2 and 4.32. Over fifty-four percent (54%) of the stores that have an employment application device do not have an accessible device, in violation of Standard 4.2.   Twenty percent (20%) of the stores surveyed have inaccessible check out counters.

46.  Upon information and belief, every CVS store inspected by the ERC includes one or more of the access barriers described in paragraph 45 above. As a result, these CVS stores violate the ADA, its implementing regulations and Standards, and the Rehabilitation Act. Additionally, based on the same barriers and conditions, the CVS stores located within Washington, D.C. violate the DCHRA.

**<u>Defendant's Responsibility For Access Barriers in CVS Stores</u>**

47.     Defendant owns and operates all of the CVS stores inspected by the ERC and reported by ERC members.

48.     Upon information and belief, the access barriers at CVS stores are the result of a common design or designs dictated by Defendant's corporate policies, practices and procedures and/or absence of corporate policies, practices and procedures relating to compliance with the ADA, the Rehabilitation Act and DCHRA, where applicable.

49.     Modification of Defendant's policies, practices and procedures to ensure full and equal enjoyment of CVS stores to individuals with disabilities would not constitute a fundamental alteration of the nature of CVS's goods, services, facilities or accommodations. Therefore, by its failure to modify its policies, practices and procedures, Defendant has violated and continues to violate the ADA, the Rehabilitation Act, and the DCHRA.

50.     Through its ownership and control of operations, Defendant has the capacity and authority to eliminate barriers at each CVS store, and to modify its policies, practices and procedures to comply with the ADA, the Rehabilitation Act, and DCHRA.  Defendant, however, has failed to eliminate such barriers or to otherwise provide accessibility for persons with disabilities to its merchandise aisles, pharmacy counters, parking and other elements of its facilities.  Moreover, Defendant has failed to eliminate these barriers notwithstanding its 2002 settlement agreement with the ERC and 2009 settlement agreement with ACB, AFB and CCB.

51.     Removal of access barriers identified at CVS stores is readily achievable and is therefore required by law.

52.     As a result, by its policies and practices that fail to maintain stores that comply with the ADA, the Rehabilitation Act and the DCHRA where applicable, Defendant has violated and continues to violate the ADA, the Rehabilitation Act and the DCHRA.

**Plaintiffs Have Been Injured by Defendant's Discriminatory Conduct**

53.     As a result of Defendant's continuing failure to modify its policies, practices and procedures to provide accessibility to its merchandise aisles, pharmacy counters, parking and other elements of its facilities, as required by the ADA, the Rehabilitation Act, and the DCHRA where applicable,  Plaintiffs Johnson, Ramsey and Butler have suffered and will continue to suffer, injury including, but not limited to, a deprivation of their right to full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of CVS stores, as well as humiliation, embarrassment and emotional distress from the indignity and stigma of discrimination.

54.     As a result of Defendant's continuing failure to modify its policies, practices and procedures to provide accessibility to its merchandise aisles, pharmacy counters, parking and other elements of its facilities, as required by the ADA, the Rehabilitation Act, and the DCHRA where applicable, Plaintiff ERC and its members have suffered and will continue to suffer, injury including, but not limited to:

a.      the frustration of the mission of The ERC to achieve equality of access for persons with mobility impairments and the elimination of discrimination against persons with disabilities in public accommodations, and

b.      the diversion of The ERC's resources necessary to identify and counteract Defendant's unlawful discriminatory practices, and

c.      interference with the interests of The ERC and its members in protecting their rights to live in and enjoy a community that is free from discrimination on the basis of physical disability.

### Injunctive Relief is Necessary and Appropriate
### to Protect the Rights of the Plaintiffs

55.     Defendant's failure to modify its policies, practices and procedures to ensure full and equal enjoyment of its stores by people with disabilities, and to provide merchandise aisles, pharmacy counters, parking and other elements as required by the ADA and the Rehabilitation Act, denies persons with disabilities the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of CVS stores, and subjects persons with disabilities to discrimination by a program or activity receiving Federal financial assistance.

56.     Defendant's failure to provide accessible merchandise aisles, pharmacy counters, parking and other elements denies persons with disabilities the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of CVS stores in Washington, D.C., in violation of the DCHRA.

57.     Plaintiffs have reasonable grounds to believe that CVS stores will continue to fail to provide accessible merchandise aisles, pharmacy counters, parking and other elements as required by the ADA, Rehabilitation Act, and DCHRA, and that therefore Plaintiffs Johnson, Ramsey, Butler, the ERC and its members will be subjected to continuing discrimination in violation of the ADA, Rehabilitation Act and the DCHRA.

58.     Plaintiffs have no plain, adequate or complete remedy at law.  Plaintiffs Johnson, Ramsey, Butler, the ERC and its members have suffered, are suffering, and will continue to suffer irreparable injury as a result of Defendant's continuing discriminatory conduct.

## FIRST CLAIM FOR RELIEF
## Violation of the Americans With Disabilities Act

59.     Plaintiffs incorporate by reference each allegation contained above as if fully set forth herein.

60.     At all times relevant to this action, the ADA was in full force and effect in the United States.

61.     On July 12, 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," including discrimination resulting from "the discriminatory effects of architectural…barriers…." 42 U.S.C. § 12101(b)(1) & (a)(5).

62.     The ADA prohibits discrimination against persons with disabilities.  The ADA provides, in pertinent part, that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."   42 U.S.C. § 12182(a).

63.     Plaintiffs Johnson, Ramsey and Butler are persons with disabilities within the meaning of the ADA.

64.     Plaintiff ERC is an organization whose mission includes achieving equality of access for persons with mobility impairments and the elimination of discrimination against persons with disabilities in public accommodations.   ERC members include persons with disabilities within the meaning of the ADA.

65.     CVS stores are "places of public accommodation" within the meaning of Section 302(a) of the ADA (codified at 42 U.S.C. § 12182(a)).  42 U.S.C. § 12181(7)(F).

66.     Defendant is a "private entity who owns, leases (or leases to), or operates a place of public accommodation," and therefore has obligations under Title III of the ADA.  42 U.S.C. § 12182(a).

67.     The Department of Justice Regulations implementing Title III of the ADA are codified at 28 C.F.R. Part 36 & Appendix A.   Under these Regulations, places of public accommodation must maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 CFR § 36.211.

68.     Appendix A of the Department of Justice regulations implementing Title III of the ADA, entitled Standards for Accessible Design ("Standards"), sets standards for accessibility for places of public accommodation, such as retail drugstores and pharmacies.  These Standards are to be applied during the design, construction, and alteration of such buildings and facilities.  The Standards provide specific requirements for accessibility, including requirements for paths of travel, reach ranges, and parking.

69.     Standards 7.1-7.4 provide additional specifications for businesses regarding sales and service counters, check out aisles, and other equipment that ensure these areas and items are accessible to and usable by persons with disabilities. Standards 7.1-7.4 provide that these areas and items shall be accessible to and usable by persons with disabilities, including persons who use wheelchairs.

70.     Title III of the ADA requires that places of public accommodation shall remove barriers in existing facilities, where such removal is readily achievable.   42 U.S.C. § 12182(b)(3)(A)(iv).

71.     On information and belief, some or elements of some of the CVS stores inspected by ERC and identified in this Complaint are existing facilities.

72.     Title III of the ADA requires that alterations to facilities made later than 30 months after July 26, 1990 must be made "in such a manner that, to the maximum extent feasible, the altered portions of the facility are accessible to and usable by individuals with disabilities…." 42 U.S.C. §§ 12183(a)(2); 28 C.F.R. § 36.402(b) and (c).

73.     On information and belief, some or elements of some of the CVS stores inspected by ERC and identified in this Complaint had alterations to portions of their facility later than 30 months after July 26, 1990 within the meaning of the ADA, 42 U.S.C. § 12183(a)(1).

74.     Title III of the ADA requires that facilities designed and constructed later than 30 months after July 26, 1990, are required to be "readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that is structurally impracticable…." 42 U.S.C. §§ 12183(a)(1).

75.     On information and belief, some or elements of some of the CVS stores inspected by ERC and identified in this Complaint are or were "design[ed] and construct[ed] for first occupancy" later than 30 months after July 26, 1990 within the meaning of the ADA, 42 U.S.C. § 12183(a)(1).

76.     The CVS stores include access barriers to individuals with disabilities, such as inaccessible merchandise aisles, pharmacy counters, parking and other elements.

77.      The access barriers at CVS stores constitute unlawful discrimination on the basis of disability because they deny disabled individuals, including Plaintiffs, the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations provided by CVS stores, and as such, Defendant violates the ADA.

78.     Removal of these barriers is readily achievable, structurally practicable and feasible and is required by the ADA.

79.     Places of public accommodation must maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities, unless the interruption in service or access is isolated or temporary and due to maintenance or repairs.  28 CFR § 36.211.

80.     On information and belief, Defendant has failed to maintain accessible features at its stores, including accessible paths of travel.  Such failure has been consistent and widespread, and is not due to maintenance or repairs, but rather to corporate policies and practices, or the lack thereof, relating to prompt stocking of merchandise and accessible positioning of merchandise displays.

81.     Upon information and belief, the access barriers outlined herein are the result of Defendant's policies, practices, or procedures and/or the absence of policies, practices, and procedures for enforcing the ADA.  These "policies, practices, or procedures" impose barriers to access within the meaning of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii) throughout this chain of stores.  These policies, practices and procedures include, but are not limited to:

- failure to maintain accessible features, such as accessible paths of travel through merchandise aisles;

- approval of standardized counters and equipment, including pharmacy counters and blood pressure monitors, that are inaccessible to wheelchair users;

- failure to ensure that other elements of the stores, such as parking, meet the requirements of the ADA and are accessible to customers with disabilities.

82.     Pursuant to the ADA, public accommodations must "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . ."  42 U.S.C. § 12182(b)(2)(A)(ii).  Defendant's failure to make reasonable modifications in policies, practices, or procedures necessary to afford individuals with disabilities access to the facilities, goods, and services of their stores violates the ADA and irreparably injures Plaintiffs Johnson, Ramsey, Butler and the ERC.

83.     Modification of Defendant's policies, practices, and procedures will not fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations offered by CVS stores.

84.     Defendant is liable for violation of Plaintiffs' rights under the ADA because at all times relevant hereto Defendant owned and operated the CVS stores identified in this Complaint.

85.     Defendant's failure to comply with the ADA has resulted and will continue to result in harm to Plaintiffs, and other individuals with disabilities, unless and until Defendant is ordered by this Court to make modifications to its CVS stores and its policies, practices, and procedures pursuant to the ADA and Standards.

**SECOND CLAIM FOR RELIEF**
**Violation of the Rehabilitation Act**

86.     Plaintiffs incorporate by reference each allegation contained above as if fully set forth herein.

87.     At all times relevant to this action, the Rehabilitation Act was in full force and effect in the United States.

88.     The Rehabilitation Act forbids programs or activities receiving Federal financial assistance from, among other things, discriminating against otherwise qualified individuals with disabilities.

89.     Plaintiffs Johnson, Ramsey and Butler are otherwise qualified individuals with disabilities within the meaning of the Rehabilitation Act.

90.     Plaintiff ERC is an organization whose mission includes achieving equality of access for persons with mobility impairments and the elimination of discrimination against

persons with disabilities.  ERC members include otherwise qualified individuals with disabilities within the meaning of the Rehabilitation Act.

91.     Defendant CVS Caremark is subject to the Rehabilitation Act because it is a program or activity receiving Federal financial assistance, in that it receives Federal financial assistance administered by the United States Department of Health and Human Services including Medicare provider payments from the centers for Medicare/Medicaid Services under Title XVIII, Part D of the Social Security Act, 42 U.S.C. § 1395 *et seq*.

92.     Defendant has violated and continues to violate the Rehabilitation Act by, *inter alia*, denying disabled individuals, including Plaintiffs, the full and equal goods, services, facilities, privileges, advantages or accommodations of CVS stores throughout the United States.

93.     Defendant's conduct has harmed Plaintiffs and will continue to harm Plaintiffs unless and until Defendant is ordered by this Court to make CVS stores accessible to individuals who depend on wheelchairs for mobility and other individuals with disabilities.

94.     Defendant's conduct has caused Plaintiffs damages in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**Violation of the District of Columbia Human Rights Act**

95.     Plaintiffs incorporate by reference each allegation contained above as if fully set forth herein.

96.     At all times relevant to this action, the DCHRA was in full force and effect in Washington, D.C.

23

97.     Plaintiffs Johnson, Ramsey, Butler and the ERC are each "aggrieved persons" within the meaning of the DCHRA.

98.     Each CVS store located in the District of Columbia is a "place of public accommodation" within the meaning of the DCHRA, D.C. Code § 2-1401.02(24), and Defendant is an owner of a place of public accommodation within the meaning of the DCHRA.  D.C. Code § 2-1401.02(20).

99.     The DCHRA makes it an unlawful discriminatory practice to "deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations" "wholly or partially for a discriminatory reason based on the actual or perceived . . . disability . . . of any individual." D.C. Code § 2-1402.31(a)(1).

100.    The DCHRA further provides that "[a]ny practice which has the effect or consequence of violating any of the provisions of [the DCHRA] shall be deemed to be an unlawful discriminatory practice."  D.C. Code § 2-1402.68.

101.    Defendant has violated and continues to violate the DCHRA by, *inter alia*, denying disabled individuals, including Plaintiffs, the full and equal goods, services, facilities, privileges, advantages or accommodations of CVS stores in Washington, D.C.

102.    Defendant's conduct has harmed Plaintiffs and will continue to harm Plaintiffs unless and until Defendant is ordered by this Court to make CVS stores in Washington, D.C. accessible to individuals who depend on wheelchairs for mobility and other individuals with disabilities.

103.    For its violations of the DCHRA, Defendant is liable to Plaintiffs for compensatory damages, punitive damages, and costs and attorneys' fees in amounts to be determined at trial, and all other available relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Johnson, Ramsey and Butler and ERC respectfully pray that this Court:

(a)     Declare the acts and omissions of Defendant complained of herein to be in violation of the ADA, the Rehabilitation Act and the DCHRA;

(b)     Enter a preliminary and permanent injunction requiring Defendant to modify its policies, practices and procedures, to bring such policies, practices and procedures into compliance with the ADA, the Rehabilitation Act, and the DCHRA, where applicable;

(c)     Enter a preliminary and permanent injunction requiring Defendant to remove all architectural barriers at its CVS stores;

(d)     Enter judgment awarding Plaintiffs compensatory damages in an amount appropriate to the proof at trial;

(e)     Award Plaintiffs their costs and attorneys' fees, including litigation expenses, reasonably incurred in the prosecution of the action; and

(f)     Award Plaintiffs such other and future relief as the Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, by counsel and pursuant to Federal Rule of Civil Procedure 38(b), hereby demand a trial by jury on all claims so triable in this action.

DATED this 9th day of December, 2009.

MARSHA JOHNSON, CHARLA RAMSEY,
CHRISTOPHER BUTLER and
EQUAL RIGHTS CENTER,

By their attorneys,


/s/ Derek Y. Sugimura
Derek Y. Sugimura (bar no. 28600)
Gilbert LLP
1100 New York Ave. NW, Suite 700
Washington D.C. 20009
Tel: (202) 772-2200


/s/ Elaine Gardner
Elaine Gardner
(pro hac vice application to be filed)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 DuPont Circle, N.W.
Suite 400
Washington, D.C. 20036
Tel: (202) 319-1000